UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHOMARI HATCHER,

        Plaintiff,                    Civil Action No. 12-13831

    v.                            District Judge Stephen J. Murphy, III
                                      Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [11] AND
## GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]

Plaintiff Shomari Hatcher appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his application for supplemental security income ("SSI"). (*See* Dkt. 1, Compl.)  Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 11 & 14).  For the reasons set forth below, this Court finds that substantial evidence supports the Administrative Law Judge's decision.  The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 11) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 14) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

**I. BACKGROUND**

Plaintiff has a high school education, although he did not graduate. (Tr. 27.) He has no past relevant work because he was incarcerated for 12 and one-half years for several serious felony convictions. (Tr. 38-39.) Plaintiff claims that his psychiatric condition precludes him from engaging in full-time employment. (Tr. 39, 43.)

**A. Procedural History**

On April 23, 2009, Plaintiff protectively filed an application for supplemental security income asserting that he became unable to work on March 1, 2009. (Tr. 112-17.) The Commissioner initially denied Plaintiff's disability application on August 20, 2009. (Tr. 66.) Plaintiff then requested an administrative hearing, and on February 28, 2011, he appeared via video conference before Administrative Law Judge ("ALJ") Rebecca LaRiccia, who considered his case *de novo*. (Tr. 33-65.) In an April 7, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (*See* Tr. 28.) The ALJ's decision became the final decision of the Commissioner on July 17, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff filed this suit on August 30, 2012. (Dkt. 1, Compl.)

**B. Testimony at the Hearing Before the ALJ**

*1. Plaintiff's Testimony*

Plaintiff was 32 years old at the time he alleges he became unable to work. (Tr. 113.) Plaintiff was released from prison in March 2009. While incarcerated he engaged in various jobs including laundry, mopping floors, and cleaning bathrooms. (Tr. 50-51.) Plaintiff indicated that he "occasionally" had trouble doing these types of activities. (Tr. 50.)

Plaintiff testified that he was too unstable to work because his mood changes every day, multiple times a day, from happy to angry. (Tr. 43.) Although Plaintiff testified to being angry, he indicated that he was able to control his anger and not act on it. (Tr. 44.) Plaintiff is in mental health treatment at Detroit East five days per week. (Tr. 44.) Plaintiff reported that he was taking Seroquel, Celexa, and Depakote. (Tr. 46.) Plaintiff indicated that he was supposed to take three doses of Seroquel per day, but he has only been taking two doses. (Tr. 56-57.) Plaintiff testified that he was not taking his medications in the evenings because it makes him too sleepy and he does not trust people. (Tr. 56-57.) Plaintiff testified that when he takes his medication he is able to manage his emotions and not get into physical altercations. (Tr. 41.) Plaintiff reported that he feels like he is "getting better," and does not feel like he gets angry to the point of wanting to hurt himself or other people very often. (Tr. 52.)

Plaintiff testified that he recently quit using both alcohol and drugs:

> it was easier for me to stop using drugs because it actually made me feel -- it was starting to make me feel worse. I was more -- getting more and more depressed, and feeling like I wanted to not -- more so hurt other people and, and myself. So I, I had to -- so that's why I let it go. And I kind of figured that I wouldn't have a problem leaving that alone, but the alcohol made me feel better, and it made my pain seem like it go away. They say that the, you know -- therapist said that, you know, the alcohol does not make the pain go away better than the medication, but I said it does, because they, you know, don't have me on anything good. But when I, when I drink it was -- it seems like, you know, I feel happier, and, and the pain seems like it goes away. And, you know, I told them I wasn't going, I wasn't going to pick it up anymore, you know. And I had too many funerals at one time, so that was I'm not going to say that that was a good excuse to pick up, but I, I, I never experienced that before. I, you know, that was a hard time for me.

(Tr. 51-52.)

        *2. The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience who was capable of performing work at the medium exertional level, but can understand, remember, and carry out no more than simple instructions. (Tr. 62.) Moreover, this person should have no more than superficial contact with the general public, and should avoid fast-paced production-type work activities. (Tr. 62-63.) The VE testified that such an individual would be capable of performing such jobs as a floor waxer, stores laborer, and an industrial cleaner. (Tr. 63.)

The VE indicated that the above jobs would be precluded if the hypothetical individual could only have superficial contact with supervisors and coworkers, and would have occasional difficulty, meaning up to one-third of the workday, adjusting to changes in the work setting, as well as occasional difficulty maintaining a regular schedule and being punctual within customary tolerances. (Tr. 63.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

4

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ LaRiccia found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of April 23, 2009. (Tr. 22.) At step two, she found that Plaintiff had the following severe impairments: bi-polar disorder, depression, personality disorder, and a history of polysubstance abuse, in current remission. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to

> perform medium work as defined in 20 CFR 416.967(c) except the claimant can understand, remember and carry out [no more than] simple instruction with no more than superficial contact with the

> general public. He cannot perform work with fast-paced production standards.

(Tr. 24.) At step four, the ALJ found that Plaintiff had no past relevant work experience. (Tr. 27.) At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity. (Tr. 27.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of her decision. (Tr. 28.)

### III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation

marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

Plaintiff alleges three claims of error. First, Plaintiff claims that the ALJ's conclusion that his psychiatric condition was not disabling is not supported by substantial evidence. Second, Plaintiff claims that the ALJ erred by excluding symptoms and issues that arose from his noncompliance with mental health treatment and/or substance abuse. And, third, Plaintiff claims that the hypothetical posed to the VE does not adequately account for his limitations in concentration, persistence, or pace. For the reasons discussed below, this Court concludes that substantial evidence supports the ALJ's conclusions.

### A. The RFC Finding

Plaintiff first alleges that substantial evidence does not support the ALJ's RFC finding that his psychiatric condition was not disabling, thereby precluding all competitive work. (Pl.'s Mot. Summ. J. at 8-10.) In support, Plaintiff identifies two involuntary psychiatric hospitalizations—in June and July 2010. (*Id*. at 8.) Plaintiff also notes his "extreme emotional reactivity" even to minor stressors, pointing out that he threatened to burn down his mother's house. (Pl.'s Mot. Summ. J. at 8-9.) Plaintiff also complains that the ALJ erred in rejecting the opinions of his mental health treaters because they were subjective rather than objective in nature. (*Id*. at 9-10.) The Court has reviewed the record and concludes that substantial evidence supports the ALJ's RFC findings.

Specifically, the ALJ discussed Plaintiff's two hospitalizations from the summer of 2010. (Tr. 25.) The ALJ noted that both of the hospitalizations were the result of medical non-compliance and/or drug and alcohol use. (*Id*.) The ALJ cited the discharge report from the June 2010 hospitalization, in which it was noted that Plaintiff's mood and mental status had improved once he engaged in group therapy and restarted medication. (Tr. 25, 355.) Moreover, the June discharge report noted that Plaintiff's mood was good, his thought processes were linear, and that he no longer acknowledged thoughts of wanting to hurt himself or others. (Tr. 355.) The ALJ also cited Plaintiff's July 2010 discharge report indicating that Plaintiff participated in treatment while at the hospital, and at discharge he exhibited no major behavioral problems. (Tr. 25, 542.) In addition, the July discharge report noted that Plaintiff exhibited relevant thought content without hallucinations or delusions. (Tr. 542.) Importantly, the same month that Plaintiff was discharged from the second hospitalization, he reported that his medications were helping him without side effects, and that psychiatrist Dr. Someswara Navuluri found him to be alert, cooperative,

appropriate, and medically stable. (Tr. 767.) The Court concludes that the ALJ sufficiently accounted for the evidence of Plaintiff's hospitalizations in her RFC findings.

With respect to Plaintiff's "extreme emotional reactivity," the ALJ noted that Plaintiff had "moderate" difficulties in social functioning. (Tr. 23.) While Plaintiff stated that he "got along poorly with friends, family, and neighbors . . . he attended and enjoyed group therapy." (*Id.*) His therapists indicated that Plaintiff had a "stable mood." (Tr. 23, 770.) The ALJ recognized that while there were instances of Plaintiff being self-isolative, the medical record noted that Plaintiff was "medically stable" with his depression and anxiety "lifting." (Tr. 23, 764.) The Court concludes that the ALJ sufficiently accounted for the evidence of Plaintiff's emotional reactivity in her findings that limited Plaintiff's contact with the public.

Plaintiff also alleges that the ALJ improperly discounted the opinions of his mental health treatment providers, Dr. Raju[1] and Joseph White. (Pl.'s Mot. Summ. J. at 9-10.)

Joseph White is a social worker at Detroit East. (Tr. 853.) The opinions of social workers are considered "other sources" as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d). These opinions "cannot by themselves, establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source." (*Id.*) Social Security Ruling 06-03p provides that the ALJ "generally should explain the weight given to the opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See also* 2006 WL 2329939, at \*6 (Aug. 9, 2006).

---

[1] Plaintiff misidentifies the name of this physician as Dr. Raju. The correct name is Dr. Someswara N. Navuluri. (Tr. 769.)

The Sixth Circuit has stated: "[w]hile the ruling notes that information from 'other sources' cannot establish the existence of a medically determinable impairment, the information 'may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007).

The ALJ gave "little weight" to White, concluding that his opinion was "not based on objective findings[.]" (Tr. 26.) The ALJ concluded that the assessment noted "extreme impairment in physical health and marked impairment in activities of daily living but there is absolutely no objective support for this." (*Id.*) Furthermore, the ALJ expressed concern that the report was a "self-assessment" done by Plaintiff, rather than completed by White himself. (*Id.*) Either way, the ALJ concluded that the assessment appeared to be based on subjective complaints as opposed to objective findings and mental status exam findings. (*Id.*) And, as the Court will discuss next, Dr. Navuluri's mental status exam findings frequently showed Plaintiff to be "medically stable" and "doing well." (Tr. 26, *citing* 19F, p. 42.) Based on the above, the Court concludes that the ALJ complied with S.S.R. 06-03p.

Plaintiff also complains that the ALJ discounted the opinion of Detroit East psychiatrist Dr. Navuluri. (Tr. 769.) Plaintiff claims that Dr. Navuluri reported that his depression was "lifting" but had not disappeared, and that he was only "medically stable," but not "psychiatrically" so. (Pl's Mot. Summ. J. at 9.) Plaintiff also argues that Dr. Navuluri frequently noted that, despite medications, Plaintiff remained angry and irritable. (*Id.*) The ALJ noted that many records at Detroit East contained individual therapy notes for depression as well as polysubstance abuse. (Tr. 25.) In September 2009, the therapists at Detroit East determined that Plaintiff had moderate impairment in most domains of functioning. But, by December 2009, Dr. Navuluri noted a "stable

10

mood." (Tr. 25, 50.) In October 2010, Dr. Navuluri again reported that Plaintiff had a stable mood, that his anxiety and depression were lifting, and that he was "medically stable." (Tr. 764.) Contrary to Plaintiff's suggestion, Dr. Navuluri's notes are not limited to Plaintiff's medical condition, but speak directly to Plaintiff's psychological state. Indeed, Dr, Navuluri spoke in terms of Plaintiff's *mood* being "stable," and Plaintiff's *depression* "lifting." (*Id.*) Moreover, Dr. Navuluri indicated that Plaintiff denied any suicidal thoughts or plans. (*Id.*) The ALJ concluded that "[w]hile there are infrequent and occasional issues with depression, overall the claimant has been stable with his depression and anxiety lifting. The claimant alleged that he had more limitations than the objective medical evidence supports. Even so his limitations are not severe enough to preclude sustained employment." (Tr. 26.) This was confirmed by Plaintiff's Detroit East therapists who agreed that he was only mildly impaired in his ability to work. (Tr. 882.)

The Sixth Circuit has held that the treating source rule does not apply unless there is a "genuine assertion by the treating physician of an opinion involving the claimant's 'symptoms, diagnosis, and prognosis.'" *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009); *see* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Here, Plaintiff has not identified a statement made by Dr. Navuluri that would constitute a medical source opinion. The evidence Plaintiff identifies regarding his ongoing anger and irritability did not constitute a medical source opinion that must be accorded deference because there was no diagnosis or functional analysis from Dr. Navuluri about his impairment. The Court concludes that substantial evidence

11

supports the ALJ's treatment of Dr. Navuluri's opinions.

Moreover, the Court concludes that the ALJ's conclusions were reasonable in light of the minimal record evidence of any physical limitations (and, tellingly, Plaintiff does not challenge the ALJ's conclusion that he could perform medium work): Plaintiff's activities in prison (Tr. 50-51), his admission that he could assist his mother (Tr. 54), and the medical evidence showing that his condition had improved significantly with treatment and abstinence from drugs and alcohol. Both the Social Security regulations and the Sixth Circuit recognize the legitimacy of the ALJ's concerns. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, § 1.00A; *see also Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) ("Initially, there must be objective evidence of an underlying medical condition."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("[t]reating physicians' opinions are only given such deference when supported by objective medical evidence."). Importantly, the ALJ's concern about over-reliance on Plaintiff's self-reporting of symptoms is especially warranted in this case given that several mental health professionals expressed concern that Plaintiff was a malingerer who exaggerated his symptoms. (Tr. 26, 316, 331, 333.) The ALJ cited these concerns in making her adverse credibility finding. (Tr. 24, 26-27.) Notably, Plaintiff does not challenge the ALJ's credibility determination. For all of these reasons, the Court concludes that the RFC is supported by substantial evidence.

### B. Non-Compliance with Treatment and Medications

Plaintiff next argues that the ALJ erred when she failed to determine whether alcohol or drugs played a role in his disability, and whether there was a "justifiable cause" for him to be non-compliant with his treatment and medications. (Pl.'s Mot. Summ. J. at 11.)

Benefits under Title II and/or XVI of the Social Security Act were amended by Congress

when it passed the Contract with America Advancement Act of 1996, which states in pertinent part: "An individual shall not be considered to be disabled for the purposes of this Title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

In response to this amendment, regulations were promulgated that set forth a "but-for" test to determine whether alcoholism or drug addiction would be a "contributing factor" material to a claimant's disability. *See Davis v. Apfel*, 133 F. Supp. 2d 542, 544 (E.D. Mich. 2001). Regulation 404.1535(a) and 416.935(a) state that " [i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability . . ." 20 C.F.R. §§ 404.1535(a) and 416.935(a)(emphasis added). Hence, if an individual is found to be disabled, and then the Commissioner determines that alcoholism and/or drugs contributed materially to that finding, the individual is barred from collecting disability benefits and/or supplemental income under the 1996 amendments. Congress adopted this amendment "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

The Sixth Circuit has made clear that "[s]ubstance abuse is not considered until the Commissioner first makes a finding that a claimant is disabled." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013) (*citing* 20 C.F.R. § 404.1535); *see also Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) ("[A]n ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need

13

to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935."). The Court in *Gayheart* went on to say that where an ALJ concludes that a claimant is not disabled, there is no need to assess the materiality of a claimant's substance abuse. *Id.* Here, the ALJ determined that Plaintiff was not disabled. Therefore, the ALJ had no duty to assess whether alcohol or drugs played a role in Plaintiff's disability claim. *See Gayheart*, 710 F.3d at 380.

### C. **Hypothetical Questions**

Plaintiff's last claim of error is that the ALJ's hypothetical to the vocational expert did not adequately portray his moderate limitations in concentration, persistence, or pace ("CPP"). (Pl.'s Mot. Summ. J. at 12-14.)

This Court has previously made clear that the ultimate question is whether substantial evidence supports the ALJ's choice of limitations in the residual functional capacity assessment and corresponding hypothetical, and "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration." *Taylor v. Comm'r of Soc. Sec.*, No. 10-CV-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011) (Michelson, M.J.), *report and recommendation adopted,* 2011 WL 2682892 (E.D. Mich. July 11, 2011) (Edmunds, J.); *see also Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (holding, where ALJ made a finding that the plaintiff "often" has difficulties in CPP, that the ALJ did not need to include talismanic language in his hypothetical, at least where the evidence demonstrated that the claimant's concentrational difficulties were negligible and ALJ limited the claimant to "routine and low stress" jobs that did not involve "high quotas").

This Court discussed the relevant case law at length in a recent report and recommendation, *White v. Comm'r of Soc. Sec.*, No. 12-12833, slip report and recommendation (E.D. Mich. Apr. 26,

14

2013) (Michelson, M.J.).[2] In sum, some cases suggest that an RFC limiting a claimant to "unskilled" or "simple, routine" work is not sufficient to account for "moderate" limitations in CPP because the claimant may have difficulty staying on task or keeping pace even when performing unskilled or simple, routine work, but other decisions have recognized that limiting a claimant to unskilled or simple, routine work is sufficient because at least some claimants with those limitations can stay on task and keep pace when the work is simple. Often, in the latter cases, the medical evaluation that assessed moderate CPP limitations also concluded that the claimant could perform unskilled work on a sustained basis.

Here, however, the ALJ did include CPP limitations in her hypothetical to the vocational expert when she asked the VE to opine on whether jobs would be available to a person who, among other things, was capable of carrying out only simple instructions and should avoid fast-paced production-type work activities. (Tr. 62.) Additionally, Plaintiff has not identified a medical evaluation in the record that assessed moderate CPP limitations and also concluded that Plaintiff was not capable of performing unskilled work on a sustained basis. Thus, the Court concludes that the ALJ's hypothetical to the VE was proper.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's decision. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 11) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 14) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

---

[2] Objections to this Court's report and recommendation in *White* are pending.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES MAGISTRATE JUDGE

Dated: July 30, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 30, 2013.

                                                  s/Jane Johnson
                                                  Deputy Clerk