UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHOMARI HATCHER,

       Plaintiff,                        Case No. 12-cv-13831

v.                                        HONORABLE STEPHEN J. MURPHY, III

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION** (document no. 16), **DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** (document no. 11), **AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (no. 14)

The Social Security Administration ("SSA") denied Plaintiff and claimant Shomari Hatcher's application for supplemental security income in a decision issued by Administrative Law Judge ("ALJ") Rebecca LaRiccia on April 11, 2011. After the SSA Appeals Council declined to review the decision, Hatcher appealed to this Court. The Court referred the matter to a magistrate judge, and the parties filed cross motions for summary judgment. On July 30, 2013, the magistrate judge issued a Report and Recommendation ("Report") suggesting denial of Hatcher's motion and grant of the Commissioner of Social Security's ("Commissioner") motion. Report, ECF No. 16.

Hatcher filed a timely objection to the Report. He argues that the Report incorrectly applied the regulations and case law regarding the consideration of his drug and alcohol abuse; improperly failed to determine whether there was justifiable cause for him to be non-compliant with his treatment and medications; and wrongly upheld the ALJ's decision to reject his psychiatric treaters' testimony based upon subjective complaints rather than objective findings.  Objection at 2-7, ECF No. 17.

Civil Rule 72 does not require the Court to hold a hearing when reviewing a magistrate judge's findings. Fed. R. Civ. P. 72; *U.S. v. Raddatz*, 447 U.S. 667, 674 (1980) (holding 28 U.S.C. § 636 did not require a hearing for de novo review of a magistrate's findings); *see also Estate of Wyatt v. WAMU/JP Morgan Chase Bank*, 09-14919, 2012 WL 1622897 (E.D. Mich. 2012). After examining the record and considering Hatcher's objections de novo, the Court concludes that his objections do not have merit. Accordingly, the Court will adopt the Report, grant the Commissioner's motion for summary judgment, deny Hatcher's motion for summary judgment, and dismiss the case.

## STANDARD OF REVIEW

Reports and recommendations for dispositive motions issued by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge referring the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Here, Hatcher objected to three findings made by the Magistrate Judge as to the ALJ's decision. Those findings will be reviewed de novo by the Court.

Judicial review of decisions by the Commissioner is authorized by 42 U.S.C. § 405(g). A reviewing court only examines an ALJ's determination to see if it is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Therefore, a review of the Commissioner's decision gives great deference to an ALJ's findings. A court should not

replace an ALJ's judgment of the facts with its own view of the evidence unless an ALJ's finding is completely without support. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989) ("We do not review the evidence de novo, make credibility determinations nor weigh the evidence."). If an ALJ's decision is supported by substantial evidence, the Court must accept the finding, even if substantial evidence would support a different finding as well. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

## BACKGROUND

Shomari Hatcher was 32 years old at the date of his application for benefits. Administrative Record ("A.R.") at 27, ECF No. 6. He has a high school education. A.R. at 27. He has no past relevant work history because he was incarcerated for approximately 12 and one-half years for several serious felony convictions. A.R. at 27; 38-39. He was released from prison in March 2009. A.R. at 38. While incarcerated, plaintiff did various jobs, including laundry, mopping floors, and cleaning bathrooms. A.R. at 50-51. He "occasionally" had trouble doing those activities. A.R. at 50. Plaintiff suffered from bi-polar disorder, depression, personality disorder, and a history of polysubstance abuse. A.R. at 22.

Hatcher claims that his psychiatric condition precludes him from engaging in full-time employment. A.R. at 39, 43. Plaintiff testified that he had multiple mood changes throughout the day, often becoming angry. A.R. at 43. He was in mental health treatment at Detroit East five days per week and reported taking Seroquel, Celexa, and Depakote. A.R. at 44, 46. Although he was supposed to take three doses of Seroquel per day, he only took two doses since it made him fall asleep. A.R. at 56-57. Hatcher testified that he recently quit using both drugs and alcohol. A.R. at 51-52.

On April 23, 2009, Hatcher filed an application for supplemental security income asserting that he became unable to work on March 1, 2009. A.R. at 112-17. The Commissioner initially denied Hatcher's disability application on August 20, 2009. A.R. at 66. Hatcher then requested an administrative hearing and, on February 28, 2011, he appeared with counsel via video conference before ALJ LaRiccia. A.R. at 33-65. A vocational expert, Charles McBee, also testified in person.

On April 7, 2011, the ALJ issued her final report denying Hatcher's application for benefits. A.R. at 20-28. Overall, the ALJ concluded that Hatcher was not disabled and retained the capacity to perform medium work, although he could understand, remember, and carry out simple instruction with no more than superficial contact with the general public and could not perform work with fast-paced production standards. On July 17, 2012, the Social Security Appeals Council denied Hatcher's request for review. A.R. at 1-6.

I. <u>The ALJ's Decision</u>

When applying for disability benefits, a claimant has the burden to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F2d 680, 683 (6th Cir. 1992). In reviewing an application, an ALJ must examine the evidence using the five-step evaluation process specified by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520. The "claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). If the claimant can establish an entitlement to benefits at any step, the inquiry ends and the claimant is entitled to benefits.

First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Here, the ALJ found that Hatcher had not engaged in

4

any substantial gainful activity since April 23, 2009, the application date. A.R. at 22.

Second, the ALJ must determine whether the claimant suffers a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Here, the ALJ found that Hatcher suffered from four severe impairments: bi-polar disorder, depression, personality disorder, and a history of polysubstance abuse, which caused "more than a minimal effect" on Hatcher's ability to work. A.R. at 17.

Third, the ALJ must determine whether the claimant can prove the impairment "meets or equals" an impairment category found in the Social Security listing at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. If a claimant meets one of these categories, the claimant is considered disabled regardless of age, education, or work experience considerations. 20 C.F.R. § 404.1520(d). Here, the ALJ found that Hatcher's impairments, whether individually or combined, did not meet or equal the criteria for listings 12.04, affective disorders,12.08, personality disorders, or 12.09, substance addiction disorders. A.R. at 17.

To meet or equal a 12.04, 12.08, or 12.09 listing, a claimant must meet both "paragraph A" and "paragraph B" criteria. Although the ALJ implicitly determined that Hatcher met certain paragraph A criteria, she also concluded he did not meet the criteria of paragraph B, which requires showing at least two of the following symptoms:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, ¶ B. The ALJ found that Hatcher only had moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning and maintaining concentration; and moderate difficulties with concentration, persistence, or pace.  A.R. at 23. The ALJ found that Hatcher experienced one to two

episodes of decompensation, each of extended duration. *Id.* Although she found that Hatcher had been hospitalized for psychological problems in the last three years, on one occasion, the exacerbation of symptoms was a result of drugs and alcohol, and there was no evidence that supported more than two hospitalizations or episodes of decompensation in the last four or five years. *Id.*

The 12.04 criteria may also be met if the claimant alternatively meets "paragraph C" criteria. The ALJ found that Hatcher did not meet the criteria of paragraph C, which requires a finding of:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or
> >
> > 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> >
> > 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04, ¶ C. Here, the ALJ found that, while Hatcher had two episodes of decompensation, there was no allegation of repeated episodes of extended duration or evidence of the other two factors. A.R. at 23.

Fourth, if, as here, the claimant cannot meet or equal one of the listed entries, the ALJ will make a determination of the claimant's "residual functional capacity" to engage in work, and the claimant must show he cannot engage in work he has performed in the past. In making this determination, the ALJ will consider all the relevant evidence. The ALJ must

6

first conclude there is an underlying medical impairment capable of producing the claimant's symptoms, and then make a judgment as to the intensity, and limiting effects of the symptoms on the claimant's ability to work. The ALJ uses this judgment to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1520(e).

The ALJ concluded that Hatcher had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except that he could understand, remember, and carry out simple instruction with no more than superficial contact with the general public, and could not perform work with fast-paced production standards. A.R. at 24.

The ALJ concluded that reducing Hatcher's exertional level to a full range of medium work was appropriate in light of the very limited objective evidence in his medical record that he had a restriction in the range of motion of the lumbar spine in May 2009. A.R. at 25. The ALJ found that Hatcher had a personality disorder and a history of polysubstance abuse, although he no longer used illegal drugs, but recently relapsed into alcohol abuse. *Id.* She noted that he testified that his issues with anger were better controlled than before and, in any event, his description of those symptoms was vague. *Id.* She noted a June 2010 instance when he was quite violent, but found that it was during a time of medical non-compliance. *Id.* The ALJ also determined that limiting Hatcher's interactions with the general public was prudent based on his medical history. *Id.* She also found that medication and therapy noncompliance were issues at times for Hatcher. A.R. at 26.

Fifth, the ALJ must determine, based on the residual function capacity and the claimant's age, work experience, and education, whether the claimant can engage in other work that is available in the national economy. 20 C.F.R. § 404.1520(f). The ALJ found that

Hatcher had no past relevant work. A.R. at 27. Considering Hatcher's age, education, work experience, and residual functional capacity along with the testimony of the vocational expert, the ALJ found that Hatcher was qualified to work as a floor waxer, store laborer, or industrial cleaner, titles for which collectively thousands of jobs existed in the State of Michigan, and that he was also capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A.R. at 28. The ALJ then concluded that Anderson was "not disabled" as defined by the Social Security Act. *Id.*

The Report recommended denying Hatcher's motion for summary judgment and granting summary judgment to the Commissioner, finding that the ALJ's decision was supported by substantial evidence. Report at 15. Pursuant to 28 U.S.C. § 636(b)(1), on August 12, 2013, Hatcher filed an objection to the report. The Commissioner filed no response.

## DISCUSSION

I.  Consideration of Drug and Alcohol Abuse

Hatcher's first objection to the Report is that the ALJ committed reversible error by determining that his drug and alcohol abuse was a contributing factor material to the determination of disability without first finding him disabled.

A.  Legal Standard

"An individual shall not be considered to be disabled. . . if alcoholism or drug addiction would. . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The accompanying regulation states, "If we find you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor

material to the determination of disability. . . ." 20 C.F.R. § 416.935(a). In addition, "The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). Accordingly, "[s]ubstance abuse is not considered until the Commissioner first makes a finding that a claimant is disabled." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013).

Put another way, "an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under [20 C.F.R. § 416.935]." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The purpose of the amendment to 42 U.S.C. § 423(d)(2)(C) pursuant to the Contract with America Advancement Act ("CAA") in 1996 and the accompanying change in regulations was "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001).

B. Analysis

In the instant case, the ALJ did not determine that Hatcher was disabled. In considering whether Hatcher had an impairment to equal one of the applicable lists, including 12.09, substance addiction disorders, the ALJ merely noted that prior temporary episodes of symptom exacerbation regarding his other issues, such has his anger management problems, had been accompanied by drug and alcohol use. A.R. at 25. She also noted that this was the case when determining that he had not engaged in repeated

episodes of decompensation. A.R. at 23. In fact, the ALJ credited Hatcher's testimony that he was no longer using either drugs and alcohol, and Hatcher does not dispute his sobriety. Significantly, at step two, the ALJ determined that Hatcher had "a history of polysubstance abuse, in current remission" rather than a current impairment. A.R. at 22. Accordingly, the ALJ acted properly.

Hatcher's attempt to analogize the case at bar to *Gayheart Comm'r of Soc. Sec.*, is misplaced. In *Gayheart*, 710 F.3d 365, the Sixth Circuit determined that, although the ALJ never found the claimant to be disabled at all, thus precluding the need to assess the materiality of alcohol abuse, he actually improperly found that alcohol abuse was a factor in the decisionmaking process, particularly in weighing the opinion of his treating physician. *Id.* at 380. Not only did the ALJ list alcohol abuse as a severe mental impairment, but he also included a "hypothetical" analysis that his incapacity "could only be attributable to alcohol abuse." *Id.* at 380. As a result, in remanding the case, in part based on other grounds, the Sixth Circuit instructed that if the claimant were found to be disabled, "the materiality of his alcohol abuse needs to be reevaluated with proper attention to the record." *Id.*

In contrast, here, the ALJ did not factor in Hatcher's previous polysubstance abuse in any meaningful way. By his own admission, Hatcher's substance abuse was no longer an impediment for him. Accordingly, the Court finds that the ALJ did not misapply the regulations regarding the consideration of drug and alcohol abuse.

II.   <u>Non-Compliance with Medical Treatment</u>

Hatcher's second objection to the Report is that the ALJ did not determine whether there was justifiable cause for his non-compliance with medical treatment. As a result, he

argues that the ALJ violated SSR 82-59, 1982 WL 31384, at *3-*4.

    A.  <u>Legal Standard</u>

SSR 82-59, codified as applicable herein at 20 C.F.R. § 416.930, provides that a claimant who does not provide a treatment prescribed by his physician that can restore his ability to work must have a good reason for not following that treatment in order to be found disabled. The acceptable reasons for failure to follow prescribed treatment are limited and largely inapplicable here. 20 C.F.R. § 416.930(c). "Failure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amenable to treatment expected to restore ability to work." *Hester v. Sec. of Health & Human Servs.*, No. 89-5207, 1989 WL 115632 (6th Cir. Oct. 4, 1989). "Social Security Ruling 82-59 only applies to claimants who would otherwise be disabled within the meaning of the Act; it does not restrict the use of evidence of noncompliance for the disability." *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001); *see also Ranellucci v. Astrue*, No. 11–cv–00640, 2012 WL 4484922 at *10 (M.D. Tenn. Sept. 27, 2012).

    B.  <u>Analysis</u>

Since the ALJ did not making a finding that Hatcher was disabled, she had no duty to consider whether Hatcher had an acceptable reason for failure to follow prescribed treatment. In any event, Hatcher offers no reason at all for his failure and none of the enumerated grounds apply to him. *See* 20 C.F.R. § 416.930(c). In addition, at the hearing, Hatcher recognized the importance of following his prescribed treatment since he testified that he had become more compliant and his condition had improved. A.R. at 42, 52. Accordingly, Hatcher has presented no basis to disturb the ALJ's determination in this

11

respect.

### III. Opinions of Mental Health Treatment Providers

Finally, Hatcher contends that the ALJ should not have rejected the opinions of his mental health treatment providers as based upon his own subjective complaints rather than their objective findings. Pl.'s Objection at 6-7. He reasons that psychiatric opinions should be giving greater leeway since they are "not subject to proof by objective testing." *Id.*

#### A. Legal Standard

20 C.F.R. § 404.1527 specifies how an ALJ must evaluate medical opinion evidence. The ALJ must adhere to these standards as a matter of due process. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). An ALJ is required to give controlling weight to the opinions of a treating source if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give a treating source controlling weight, the ALJ must still "apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544.

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence. "[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires." *Id.* This error, however, is not always dispositive, and may be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that

12

the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 547) (internal citation omitted). Nevertheless, the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544).

In contrast, the opinions of social workers, like the treaters from Detroit East in the instant case, are considered "other sources" as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d), which are not required to be evaluated. Social Security Ruling 06-03p provides that the ALJ "generally should explain the weight given to the opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, 2006 WL 2329939 at *6 (Aug 9, 2006). Such opinions "cannot by themselves, establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source." *Holcomb v. Astrue*, 389 Fed. App'x. 757, 759 (10th Cir. July 22, 2010).

B. <u>Analysis</u>

Hatcher makes only a narrow challenge to the opinions of these treaters to the extent that the ALJ discredited them as based on subjective complaints rather than objective findings. He paints his argument with a broad brush, choosing not to distinguish among the

various treaters or to explain why any of their opinions were based on more than subjective complaints.

The ALJ gave little weight to the opinions of the social workers at Detroit East because she found that their findings "noted extreme impairment in physical health and marked impairment in activities of daily living but there is absolutely no objective support for this." A.R. at 26. She also found that their notes seemed to be based on Hatcher's subjective complaints and, in any event, his mental status examinations showed him to be "medically stable" and "doing well." *Id.* These reports certainly do contain records of Hatcher's statements and he cannot point to any portion of the record that suggests otherwise. *See generally* A.R. at 723-90. Thus, the ALJ's decision to give little weight to the reports of the Detroit East social workers as based on Hatcher's subjective statements is based on substantial evidence.

The ALJ's conclusions about Hatcher's treating psychiatrist, Dr. Navulari and the psychological consultative examination reports made by Drs. Fenton and Curtis, are also supported by substantial evidence. Although Hatcher appears to argue that Dr. Navulari's opinion was entitled to more weight, the ALJ never stated that the opinion was based on subjective complaints, the only challenge Hatcher has raised now. Instead, the ALJ relied on Dr. Navulari's conclusions that Hatcher was "stable with his depression and anxiety lifting." A.R. at 26; *see* A.R. at 764. The ALJ also correctly placed emphasis on the conclusions of Drs. Fenton and Curtis that Hatcher engaged in malingering. A.R. 315-557. Accordingly, the Court concludes that the ALJ's determination regarding medical opinion evidence is supported by substantial evidence.

## CONCLUSION

Hatcher's objections dispute the weight the ALJ applied to his drug and alcohol abuse, non-compliance with medical treatment, and the findings of his treaters. Because he was not found to be disabled, consideration of drug and alcohol abuse and reasons for noncompliance were irrelevant to the ALJ's inquiry. In addition, substantial evidence supported the ALJ's decision to disregard the information provided by treating social workers to the extent that it was based upon Hatcher's subjective complaints. No legal rule requires finding otherwise. The Court will not overturn the ALJ's findings, and, therefore, will deny Hatcher's motion for summary judgment, and grant the Commissioner's motion for summary judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Magistrate Judge's Report (document no. 16) is **ADOPTED** over Hatcher's objections.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (document no. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (document no. 14) is **GRANTED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 19, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 19, 2013, by electronic and/or ordinary mail.

                                              s/Carol Cohron
                                              Case Manager